UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DAILEY,

       Plaintiff,                             Hon. Paul L. Maloney

v.                                                         Case No. 1:08-CV-245

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 53 years of age at the time of the ALJ's decision. (Tr. 17, 26). He possesses a General Equivalency Diploma (GED) and also completed "some" college. (Tr. 594). Plaintiff's previous work includes landscaping and maintenance duties. (Tr. 17, 25, 65-68, 81-84).

Plaintiff applied for benefits on August 3, 2004, alleging that he had been disabled since January 1, 2003, due to hepatitis C. (Tr. 48-50, 55). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 27-47). On August 7, 2007, Plaintiff appeared before ALJ Thomas English, with testimony being offered by Plaintiff and vocational expert, James Engelkes. (Tr. 588-615). In a written decision dated August 31, 2007, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 15-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On July 12, 2004, Plaintiff participated in a liver biopsy examination, the results of which revealed "chronic hepatitis with mild portal inflammation, minimal lobular inflammation, and

3

no fibrosis." (Tr. 186-87). These findings were "compatible with chronic hepatitis C." (Tr. 187). Soon thereafter, Plaintiff began interferon treatment. (Tr. 195-200).

On August 24, 2004, Plaintiff completed a report concerning his activities. (Tr. 73-80). Plaintiff reported that he cooks, shops, reads, watches television, engages in "various" social activities, and performs "light household duties." (Tr. 75-77). Plaintiff reported that he can walk one-half mile, experiences no attention difficulties, and can follow spoken or written directions without difficulty. (Tr. 79).

On November 1, 2004, Plaintiff participated in a consultive examination conducted by Timothy Strang, Ph.D. (Tr. 130-33). Plaintiff reported that he was experiencing "very low energy" and "constant pain." (Tr. 130). He reported that his hobbies include fishing, motorcycle riding, walking in the woods, and restoring antique motorcycles. (Tr. 131). Plaintiff reported that he can cook and perform "light" housework. (Tr. 131). The results of a mental status examination were unremarkable. (Tr. 131-32). Plaintiff was diagnosed with adjustment disorder with depressed mood and polysubstance dependence, in sustained full remission. (Tr. 133).

On November 23, 2004, Frederick Greaves, Ed.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 149-62). Determining that Plaintiff suffered from adjustment disorder with depressed mood, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 150-58). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 159). Specifically, the doctor concluded that Plaintiff experienced mild, restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild

4

difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 159).

Dr. Greaves also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 145-46). Plaintiff's abilities were characterized as "moderately limited" in six categories. With respect to the remaining 14 categories, the doctor reported that Plaintiff was "not significantly limited." (Tr. 145-46).

On February 1, 2006, Plaintiff was examined by Dr. James Horton. (Tr. 285). Plaintiff reported that he was experienced pain in his knees and lower back. (Tr. 285). An examination of Plaintiff's knees revealed "excellent range of motion" with "no gross signs of effusion." (Tr. 285). The doctor diagnosed Plaintiff with mild arthritis of the knees. (Tr. 270, 272, 274, 285). Dr. Horton referred Plaintiff to Dr. Eric Leep for evaluation of his back complaints. (Tr. 285).

On February 8, 2006, Plaintiff was examined by Dr. Leep. (Tr. 282-83). Plaintiff exhibited normal gait and station. (Tr. 283). He demonstrated 5/5 strength and normal muscle tone. (Tr. 283). Plaintiff exhibited diminished range of motion, but straight leg raising was negative. (Tr. 283). Plaintiff was prescribed naprosyn and flexeril and instructed to perform strengthening exercises at home. (Tr. 283).

On March 23, 2006, Plaintiff received a lumbar paravertebral injection. (Tr. 281). Treatment notes dated April 17, 2006, reveal that Plaintiff exhibited 5/5 strength, normal muscle

5

tone, and normal range of motion in his lumbar spine. (Tr. 280). Plaintiff also reported that he was presently exercising "at the gym." (Tr. 280).

On July 27, 2006, Plaintiff participated in a functional capacity evaluation performed by Jennifer Malicki, D.P.T. (Tr. 220-59). Malicki reported that Plaintiff's performance was consistent with the ability to perform sedentary work. (Tr. 253). Malicki also noted, however, that Plaintiff "demonstrated questionable effort" and was able to function at a higher level. (Tr. 220-21). Malicki further observed that Plaintiff's "subjective reports" of pain and limitation "are questionable." (Tr. 221). In this respect, Plaintiff reported to Malicki that he enjoys the following hobbies: bicycling, motorcycling, hunting, fishing, and shooting. (Tr. 229).

On September 23, 2006, Plaintiff participated in an MRI examination of his cervical spine, the results of which revealed "mild/moderate" degenerative changes at C5-C6 and C6-C7; "mild" stenosis at C6-C7; a disc protrusion at C6-C7, "moderately narrowing the right C7 neural foramen;" and "mild" stenosis at C6. (Tr. 543-44).

On October 5, 2006, Plaintiff was examined by Dr. Leep. (Tr. 463). Plaintiff reported that he was experiencing neck pain that radiated into his right upper extremity. (Tr. 463). Plaintiff exhibited normal range of motion, strength, and muscle tone in his right upper extremity and normal flexion and extension of his cervical spine. (Tr. 463). Plaintiff participated in a nerve conduction study, the results of which revealed "no evidence of peripheral nerve injury or disease" and "no evidence of neuromuscular abnormalities." (Tr. 463).

On October 11, 2006, Plaintiff was examined by Dr. Horton. (Tr. 462). Plaintiff reported that his knees were "doing well." (Tr. 462). An examination of Plaintiff's knees revealed full range of motion with no evidence of ligamentous laxity, tenderness, or neurovascular

abnormality. (Tr. 462). The doctor concluded that Plaintiff's knees were amenable to "conservative" treatment. (Tr. 462).

Treatment notes dated December 29, 2006, indicate that Plaintiff was "very stable without any evidence of decompensation of his hepatitis." (Tr. 397). Laboratory tests revealed "all liver function tests to be completely normal." (Tr. 397).

A March 21, 2007 examination of Plaintiff's knees revealed full range of motion with no evidence of ligamentous laxity or neurovascular abnormality. (Tr. 454). Plaintiff reported that he was experiencing "some" achiness and pain in his knees that "limits him," but that "he is doing well." (Tr. 454). Dr. Horton reported that Plaintiff "has made progress." (Tr. 454).

On April 27, 2007, Plaintiff was examined by Dr. Leep. (Tr. 451). Plaintiff reported that he was experiencing low back pain that radiated into his lower extremities. (Tr. 451). Plaintiff exhibited a "stable" gait and "normal" station. (Tr. 451). An examination of Plaintiff's lower extremities revealed "full" peripheral pulses with no evidence of edema. (Tr. 451). An examination of Plaintiff's lumbar spine revealed tenderness and decreased range of motion. (Tr. 451). Plaintiff demonstrated 5/5 muscle strength. (Tr. 451). Plaintiff participated in a nerve conduction study, the results of which revealed "no evidence of peripheral nerve injury or disease" and "no evidence of neuromuscular abnormalities." (Tr. 451).

On June 20, 2007, Plaintiff was examined by Dr. Leep. (Tr. 570). Plaintiff reported that he was experiencing "stiffness in his lower back, which is worse with prolonged physical activity." (Tr. 570). Plaintiff exhibited "decreased" range of motion of the lumbar spine, but the results of the examination were otherwise unremarkable. (Tr. 570). Plaintiff was "strongly encouraged to exercise." (Tr. 570).

7

At the administrative hearing, Plaintiff testified that he daily experiences pain in his knees and lower back that he rated as 7-9 (on a scale of 1-10). (Tr. 597-98). Plaintiff reported that his medications reduce the intensity of this pain to only 6-8 (on a scale of 1-10). (Tr. 597-98). Plaintiff reported that he could walk one-half mile. (Tr. 598). Plaintiff reported that he can perform "light" housework for "periods of time." (Tr. 601). Plaintiff reported that he reads, watches television, drives, shops, and walks outside. (Tr. 602-04).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

## B. The ALJ's Decision

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

The Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) lumbar degenerative disc disease; (2) hepatitis C; (3) osteoarthritis of the knees; and (4) post-traumatic stress disorder. (Tr. 17). The ALJ determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21-22).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff is capable of performing work activities, subject to the following limitations: (1) he cannot lift more than 20 pounds occasionally or 10 pounds frequently; (2) he cannot engage in repetitive bending, twisting, or turning; (3) he cannot crawl, squat, or kneel; (4) he can sit, stand, and walk for 6 hours each during an 8-hour workday; (5) he must be able to sit or stand at will; and (6) he can

perform only simple, unskilled work. (Tr. 22). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

At the administrative hearing, the ALJ questioned vocational expert James Engelkes. The vocational expert testified that if limited to the extent indicated by the ALJ's RFC determination, Plaintiff would retain the ability to perform his past relevant work as a landscaper. (Tr. 609-10). The vocational expert further testified that there existed approximately 18,000 jobs in the lower peninsula of the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 609-10). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988).

The ALJ concluded that because Plaintiff retained the ability to perform his past relevant work as a landscaper, he was not disabled as defined by the Social Security Act. (Tr. 22-25). The ALJ further concluded that even if Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform consistent with his limitations.

    a.    New Evidence

Plaintiff first asserts that "new evidence" demonstrates that the ALJ's decision is not supported by substantial evidence. This "new evidence" was not presented to either the ALJ or the Appeals Council. This Court is precluded from considering such material when determining whether the ALJ's decision is supported by substantial evidence. *See Cline v. Commissioner of Social*

*Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This "new evidence" consists of two items. The first item is a letter from the Social Security Administration indicating that Plaintiff was awarded disability benefits, pursuant to a subsequent application, beginning February 29, 2008. (Dkt. #9). The second item is an October 30, 2007 letter authored by an official with the Michigan Works! program. (Dkt. #9).

As to the latter item, Plaintiff has not demonstrated that good cause exists for his failure to present this letter to the ALJ that resolved the claim presently in dispute. Moreover, even assuming that good cause exists, it is not reasonable to assert that consideration of this evidence by the ALJ would have led to a different result. This particular letter asserts that "it is highly unlikely [Plaintiff] would be able to secure and maintain long term employment." Consideration of this statement would not have resulted in a different outcome for at least two reasons. First, conclusions as to whether a claimant is disabled is a matter reserved to the Commissioner. *See Deaton v. Commissioner*, 315 Fed. Appx. 595, 598 (6th Cir., Mar. 5, 2009). Furthermore, this letter neither contains nor references any medical evidence or opinion to substantiate the author's opinion.

With respect to the letter indicating that Plaintiff was awarded benefits as of February 29, 2008, the Court reaches the same conclusion. That Plaintiff was subsequently awarded benefits is not medical evidence, the consideration of which would have resulted in a different outcome in this matter. It is simply an indication that the Commissioner, pursuant to a separate application for benefits, likely based on a different record, reached a different conclusion. It is not reasonable to assert that consideration of such would have resulted in a different outcome in this matter.

In sum, for the reasons articulated herein, the Court is precluded from considering Plaintiff's "new evidence," and, furthermore, there exists no basis for remanding this matter for its further consideration.

b. The ALJ Properly Evaluated the Medical Evidence

Plaintiff raises several issues concerning the ALJ's evaluation of the medical record, none of which are persuasive.

In his decision, the ALJ stated that a "November 2003 serology panel demonstrated normal liver functions." (Tr. 18). Plaintiff takes issue with this statement on the ground that "nowhere in the document [cited by the ALJ] does it say that the serology demonstrates normal liver function." The documents cited by the ALJ to support the statement in question concern the results of various laboratory tests conducted in October and November 2003. (Tr. 116-20). These tests were positive for hepatitis antibody, but were otherwise negative or within normal limits. (Tr. 116-20). Thus, in the narrowest sense, Plaintiff is correct. Any error by the ALJ in this regard is, in the Court's estimation, harmless. The ALJ's description of these test results, while arguably imprecise, was not necessarily inaccurate. The test results in question do not indicate *ab*normal liver function.

12

The ALJ's description is also entirely consistent with laboratory tests conducted on December 29, 2006, which revealed "all liver function tests to be completely normal." (Tr. 397).

Plaintiff next takes issue with a comment by the ALJ concerning Plaintiff's difficulties with alcohol. In discussing Plaintiff's counseling treatment records, the ALJ observed that Plaintiff "spent five days in jail for violation of his parole by going in a bar and drinking." (Tr. 19). Plaintiff objects to this statement on the ground that it is inaccurate. Plaintiff offers no evidence to support this assertion. On the other hand, the ALJ's statement is an accurate description of the counselor's treatment notes. (Tr. 354). While Plaintiff may not like that the ALJ made mention of his long-standing difficulties with drugs and alcohol, the ALJ's reference of such was neither irrelevant nor gratuitous. This argument, therefore, is without merit.

Plaintiff next objects that the ALJ failed to properly consider the results of an MRI examination conducted on May 2, 2005. (Tr. 182-83). This particular examination revealed "mild lower thoracic and lumbar spondylosis" and a "tiny left paracentral annular tear and disc protrusion at L5-S1 which *may* contact the anterior margin of the left S1 nerve root sheath complex prior to its exiting the spinal canal." (Tr. 182) (emphasis added). While the results of this particular examination may support Plaintiff's subjective allegations of pain and limitation, the Court is not persuaded that such calls into question the ALJ's ultimate conclusion.

In almost every circumstance in which a claimant appeals to an ALJ the denial of disability benefits, the record contains evidence which supports the claimant's position, as well as evidence which supports the denial of benefits. The ALJ's task is to weigh such conflicting evidence and render a decision as to whether the claimant is disabled. The relevant question for this Court, is not whether the record contains certain items of evidence that support a claimant's position, as

such is almost always the case. Instead, the question for this Court is simply whether the ALJ's evaluation of the evidence and determination as to disability is supported by substantial evidence. The ALJ's RFC determination in this matter is supported by substantial evidence as detailed above. Moreover, the results of the aforementioned MRI examination are neither inconsistent with nor call into question the ALJ's decision in this matter.

Finally, as discussed above, on July 27, 2006, Plaintiff participated in a functional capacity evaluation. The examiner reported that Plaintiff's performance was consistent with the ability to perform sedentary work. The examiner also observed that Plaintiff "demonstrated questionable effort" and is able to function at a higher level. She further observed that Plaintiff's "subjective reports" of pain and limitation "are questionable." In his decision, the ALJ referenced the results of this evaluation. (Tr. 20). Plaintiff argues that the ALJ's reliance on this evidence was somehow misplaced. The ALJ's discussion of the results of this evaluation are accurate and consistent with the examiner's report. This argument is, therefore, without merit.

On May 8, 2007, Plaintiff participated in a consultive examination conducted by Elaine Tripi, Ph.D. (Tr. 43-49). Dr. Tripi concluded that Plaintiff was suffering from post-traumatic stress disorder, depression, and anxiety. (Tr. 445). The doctor further concluded that Plaintiff "is not a viable rehabilitation candidate, nor is he employable at any job in the competitive market." (Tr. 445). Plaintiff asserts that the ALJ failed to accord sufficient weight to Dr. Tripi's opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions

14

and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). Nonetheless, the ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

Because Dr. Tripi examined Plaintiff on only one occasion her opinion is entitled to no special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 571-72 (6th Cir. 1989). The ALJ nevertheless considered Dr. Tripi's opinions, affording them "minimal weight" as they are "contraindicated by substantial evidence in the record." (Tr. 25). This conclusion is supported by substantial evidence. Accordingly, this argument is without merit.

Finally, Plaintiff faults the ALJ for failing to accord significance to the November 1, 2004 determination by a non-treating physician that Plaintiff's then current GAF score was 50.[2] (Tr. 130-33). While the Court must generally defer to the medical opinions expressed by a claimant's care providers, the ALJ is not required "to put stock in a GAF score in the first place" because such does not constitute "raw medical data." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 503 n.7, 511 (6th Cir., Feb. 9, 2006) (citing *Howard v. Commissioner of Social Security*,

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

276 F.3d 235, 241 (6th Cir. 2002)). The medical record does not support Plaintiff's argument that his non-exertional impairments limit him to an extent beyond that recognized by the ALJ's RFC determination, which is supported by substantial evidence. The Court, therefore, discerns no error.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 30, 2009                     /s/ Ellen S. Carmody
                                        ELLEN S. CARMODY
                                        United States Magistrate Judge